## LANNING v. FIELDCREST-CANNON, INC.

[134 N.C. App. 53 (1999)]

KYLE J. LANNING, Employee-Plaintiff v. FIELDCREST-CANNON, INC., Self-Insured, Employer-Defendant

No. COA98-41

(Filed 6 July 1999)

**1. Workers' Compensation— change of condition—return to work—compensation terminated—relapse**

The evidence supported the Industrial Commission's finding that machinist jobs within plaintiff's functional limits were not available in the open market and the Commission's conclusion that plaintiff experienced a substantial change of condition warranting reinstatement of his compensation benefits for a back injury he suffered while working as a mixer operator for defendant employer where plaintiff was thereafter employed as a machinist by a second employer but held the position for less than a month because the lifting requirements exceeded his physical abilities; plaintiff then worked full-time as a machinist for another employer and his compensation payments were discontinued as a result of this return to work; this employer at first accommodated plaintiff's lifting restrictions, but as plaintiff's responsibilities increased, he was repeatedly called upon to lift heavy materials; and plaintiff suffered a relapse and deterioration of his previous back injury and was no longer able to perform his machinist job.

**2. Workers' Compensation— marketing distributorship—employment—wages—marketable skills—no total disability**

The Industrial Commission erred by concluding that plaintiff's self-employment venture as a marketing representative or distributor for Market America did not qualify as "employment" and that plaintiff's earnings of $300-$600 per month in commissions based upon his own sales and sales of other distributors he has recruited did not constitute "wages." Therefore, where the evidence shows that plaintiff is actively engaged in the personal management of this business venture and that those skills are marketable in the labor force, plaintiff's earning capacity was not totally obliterated, and the Commission erred in determining that plaintiff is totally disabled under N.C.G.S. § 97-29.

### 3. Workers' Compensation— partial disability—partial impairment—time constraints

The Industrial Commission erred by implicitly concluding that plaintiff is entitled to partial disability benefits under N.C.G.S. § 97-30 or partial impairment compensation under N.C.G.S. § 97-31 for a work-related back injury where plaintiff's compensation for total disability ended when he returned to work for another employer; plaintiff suffered a relapse because of lifting requirements of his new job; plaintiff is no longer eligible to receive compensation under § 97-30 because more than 300 weeks have passed from the date of the injury; and plaintiff is not entitled to compensation under § 97-31 because more than 90 days have passed since his 30% permanent partial disability rating.

### 4. Workers' Compensation— attorney fees—decision for employer

Plaintiff's motion for attorney fees under N.C.G.S. § 97-88 was denied by the Court of Appeals where defendant employer brought the present appeal but the Court of Appeals determined that the Industrial Commission erred in awarding plaintiff continuing benefits under N.C.G.S. § 97-29.

Appeal by defendant from opinion and award entered 14 November 1997 by the North Carolina Industrial Commission. Heard in the Court of Appeals 23 September 1998.

*Carlton, Rhodes & Carlton, by Gary C. Rhodes, for plaintiff-appellee.*

*Smith Helms Mulliss & Moore, L.L.P., by Jeri L. Whitfield and Manning A. Connors, for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Fieldcrest-Cannon, Incorporated (defendant) appeals from an opinion and award of the North Carolina Industrial Commission (Commission) finding and concluding that Kyle J. Lanning (plaintiff) sustained a "change in condition" for which he is entitled to permanent total compensation until further order of the Commission. For the following reasons, we affirm in part, reverse in part, and remand for further appropriate proceedings.

LANNING v. FIELDCREST-CANNON, INC.

[134 N.C. App. 53 (1999)]

At the time of the injury giving rise to plaintiff's workers' compensation claim, plaintiff was 26 years old and worked for defendant as a mixer operator. While at work on 30 December 1985, plaintiff injured his back in an attempt to lift a ten-gallon bucket of dye mixes from the floor as he proceeded to climb a stairway. The bucket stuck to the floor, and plaintiff immediately felt pain and numbness in his back. Plaintiff promptly reported the injury to defendant and attempted to continue working until 20 January 1986, when he was advised to take time off and receive medical care. On 30 January 1986, Dr. William Mason, an orthopaedic specialist treating plaintiff for his injury, performed a laminectomy diskectomy to relieve plaintiff's herniated nucleus pulposus. After surgery, however, the pain continued and plaintiff needed an additional operation. On 30 June 1987, Dr. Robin Hicks performed an intertransverse fusion. Following this procedure, plaintiff continued to experience significant chronic pain and, thus, undertook physical therapy and work hardening programs to alleviate the pain. During his treatment, plaintiff has received disability ratings ranging from 25% to 45%. When he was last discharged prior to the initial award in this matter, he was rated as having 25-30% permanent partial disability of the back.

On 11 March 1991, Deputy Commissioner Scott Taylor entered an opinion and award ordering defendant to pay plaintiff compensation for total disability for the remainder of plaintiff's life, until plaintiff returned to work, or until plaintiff's condition changed, whichever occurred first. From this opinion and award, defendant appealed to the Full Commission, which entered an opinion and award on 1 July 1992 affirming the deputy commissioner's decision.

In September of 1993, plaintiff enrolled in machinist courses at Davidson County Community College in Lexington, North Carolina. Plaintiff completed these courses on or about 4 August 1994, and, on 5 September 1994, plaintiff began working as a machinist with Dunning Metals Innovations (Dunning), a job which plaintiff retained for less than a month. Plaintiff began the job working only a few hours a day and gradually increased his hours to full time. However, due to Dunning's lifting requirements, which exceeded plaintiff's physical restrictions, he was unable to remain in the position. During plaintiff's employment with Dunning, defendant mistakenly continued to pay him disability benefits, resulting in an overpayment of $894.98.

In October of 1994, plaintiff obtained full-time employment with Everette's Machine Company (Everette's) as a machinist. This consti-

tuted a "return to work," and, pursuant to the terms of the Commission's 1 July 1992 opinion and award, defendant terminated plaintiff's weekly compensation benefits on 5 October 1994. Initially, plaintiff was able to adapt to the machinist position at Everette's, primarily due to the employer's willingness to structure the job to suit plaintiff's physical limitations. However, beginning in late 1995 or early 1996, plaintiff was promoted to shop foreman, and his job requirements increased. The growth of the business required plaintiff to perform repetitive lifting in excess of his limitations, and his employer was no longer able to provide him with the necessary lifting assistance to assure that plaintiff would be able to perform the job without further injury to his back.

In April of 1996, plaintiff suffered a relapse, and the condition of his back deteriorated due to the lifting requirements of his job. On 22 April 1996, plaintiff found it necessary to consult Dr. Hicks, who prescribed a regimen of physical therapy to alleviate the reoccurrence of back pain, and required plaintiff to remain out of work after completing his physical therapy. Following this course of events, plaintiff determined that Everette's could no longer modify his job to meet his lifting restrictions; therefore, plaintiff has not returned to the job at Everette's, nor has he sought any other machinist position.

Since April of 1996, plaintiff's sole source of income has been his self-employment venture as a marketing representative or distributor for Market America. This enterprise is described as a "multi-level marketing" approach whereby representatives purchase a distributorship, sell products and recruit other distributors. Plaintiff has been expending ten to twenty hours per week in this venture, earning $300.00-$600.00 per month in commissions. If the business continues to thrive, plaintiff hopes to spend less time actively soliciting accounts, since his compensation is based upon his own sales and commissions from the sales of other distributors he has recruited.

Plaintiff filed a motion before the Commission for modification of the 1 July 1992 opinion and award pursuant to section 97-47 of the North Carolina General Statutes. Plaintiff asserted that, although his condition had substantially improved, he remained permanently partially disabled as a result of his work-related injury. The matter came on for hearing before Deputy Commissioner William Bost, who filed an opinion and award on 6 February 1997 denying plaintiff's motion for modification. The deputy commissioner concluded that plaintiff had not undergone a material change of condition which would enti-

tle him to reinstatement of benefits. From the opinion and award of the deputy commissioner, plaintiff appealed to the Full Commission. The Full Commission reversed the deputy commissioner's decision, and defendant now appeals.

---

At the outset, we address defendant's argument that the Commission erred in concluding that plaintiff experienced a substantial change of condition warranting reinstatement of his disability benefits. As a related matter, defendant contends that the Commission improperly found as fact that machinist jobs within plaintiff's functional limits were not available in the open market and that other employers were not likely to make the same accommodations for plaintiff as did Everette's. Based on the record before us, we find defendant's arguments unpersuasive.

The scope of this Court's review of an opinion and award entered by the Industrial Commission is limited to resolving whether: (1) the Commission's findings of fact are supported by competent evidence, and (2) the Commission's conclusions of law are justified by its findings of fact. *Saums v. Raleigh Community Hospital*, 346 N.C. 760, 765, 487 S.E.2d 746, 750-51 (1997). In a workers' compensation case, the Industrial Commission serves as the finder of fact, *Harrington v. Pait Logging Co.*, 86 N.C. App. 77, 356 S.E.2d 365 (1987), and, thus, it is exclusively within the Commission's province to determine the credibility of the witnesses and the evidence and the weight each is to receive. *Floyd v. First Citizens Bank*, 132 N.C. App. 527, 512 S.E.2d 454 (1999). Accordingly, "[w]hen the Commission's findings of fact are supported by competent evidence, they are binding on the reviewing court in spite of the existence of evidence supporting contrary findings." *Saums*, 346 N.C. at 765-66, 487 S.E.2d at 751. Only where there is a complete lack of competent evidence to support the Commission's findings of fact may they be set aside. *Click v. Freight Carriers*, 300 N.C. 164, 265 S.E.2d 389 (1980). The Commission's conclusions of law, however, are fully reviewable. *Peeler v. Piedmont Elastic, Inc.*, 132 N.C. App. 713, 514 S.E.2d 108 (1999).

Section 97-47 of the North Carolina General Statutes provides that upon the application of an interested party "on the grounds of a change in condition, the Industrial Commission may review any award, and on such review may make an award ending, diminishing, or increasing the compensation previously awarded." N.C. Gen. Stat. § 97-47 (1991). A change of condition for purposes of section 97-47

means " 'a substantial change, after final award of compensation, of physical capacity to earn[.]' " *Haponski v. Constructor's Inc.*, 87 N.C. App. 95, 104, 360 S.E.2d 109, 114 (1987) (quoting *McLean v. Roadway Express, Inc.*, 307 N.C. 99, 103-04, 296 S.E.2d 456, 459 (1982)). The change in earning capacity must be due to conditions different from those existing when the award was made. *Id.*

> This 'change in condition' can consist of either a change in the claimant's physical condition that impacts his earning capacity, a change in the claimant's earning capacity even though claimant's physical condition remains unchanged, or a change in the degree of disability even though claimant's physical condition remains unchanged.

*Blair v. American Television & Communications Corp.*, 124 N.C. App. 420, 423, 477 S.E.2d 190, 192 (1996) (citations omitted). The party seeking to modify an award based on a change of condition bears the burden of proving that a new condition exists and that it is causally related to the injury upon which the award is based. *Id.* "Whether the facts amount to a change of condition pursuant to N.C. Gen. Stat. § 97-47 is a 'question of law' " and, thus, is subject to *de novo* review. *Lewis v. Craven Regional Medical Center*, 122 N.C. App. 143, 149, 468 S.E.2d 269, 274 (1996) (citing *Weaver v. Swedish Imports Maintenance, Inc.*, 319 N.C. 243, 247, 354 S.E.2d 477, 480 (1987)).

[1] The evidence demonstrates that plaintiff has undergone a change of condition since the 1 July 1992 opinion and award of the Full Commission. From September of 1994 to March of 1996, plaintiff's medical condition improved enabling him to retain a full-time job as a machinist with Everette's, and, as a result of this "return to work," plaintiff's disability payments were discontinued. When plaintiff first began his position with Everette's, he was not required to do much heavy lifting. He testified that while other employees in similar positions were required to lift materials weighing a hundred pounds several times daily, he was permitted to use a fork lift or to get assistance from other employees to lift materials weighing more than ten to fifteen pounds. However, as time progressed and his responsibilities increased, plaintiff was repeatedly called upon to lift materials that weighed in excess of seventy pounds. Consequently, in April of 1996, plaintiff suffered a relapse and deterioration of his previous back injury and was no longer able to perform his machinist job.

It is worthy of noting that prior to obtaining the position at Everette's, plaintiff was employed as a machinist at Dunning. He held the position for less than a month because the lifting requirements exceeded his physical abilities. As with the job at Everette's, plaintiff began lifting very small parts and graduated to parts weighing anywhere from thirty-five to one hundred pounds. In light of these facts, we hold that there was plenary evidence in the record to support the Commission's finding that machinist jobs within plaintiff's physical capacities were not available in the open market and that plaintiff was not likely to enjoy the same accommodations at other machinist jobs as he did at Everette's. The evidence likewise demonstrates a change in plaintiff's capacity to earn wages. Thus, we hold that the Commission did not err in concluding that plaintiff experienced a substantial change of condition under section 97-47.

[2] Next, we consider defendant's contention that the Commission erred by concluding that plaintiff's earnings from his self-employment venture are not "wages" and that the venture itself does not qualify as "employment." Defendant argues that neither the evidence of record nor the Commission's findings of fact supported such a conclusion. Therefore, it is defendant's position that the Commission further erred in awarding plaintiff total disability benefits under section 97-29, subject to a credit for net earnings from his self-employment enterprise. We are compelled to agree.

The term "disability" is defined as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (Cum. Supp. 1997). To establish a claim for disability benefits, the plaintiff must make the following showing:

> (1) [he] was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) [he] was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) [his] incapacity to earn was caused by [his] injury.

*Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). An employee is entitled to receive benefits for total disability under section 97-29 if he is "totally unable to 'earn wages which . . . [he] was receiving at the time [of injury] in the same or any other employment.' " *Burwell v. Winn-Dixie Raleigh*, 114 N.C. App. 69, 73, 441 S.E.2d 145, 149 (1994) (quoting *Tyndall v. Walter Kiddie Co.*, 102 N.C. App. 726, 730, 403 S.E.2d 548, 550, *disc. review denied*, 329 N.C.

505, 407 S.E.2d 553 (1991)). Stated another way, compensation for total disability is payable only where the employee's capacity to earn wages is "totally obliterated." *McGee v. Estes Express Lines*, 125 N.C. App. 298, 300, 480 S.E.2d 416, 418 (1997). "If the employee has the capacity to earn some wages, but less than he was earning at the time of the injury, he is entitled to partial disability benefits under section 97-30." *Id.* The burden is on the plaintiff to establish the existence and the extent of his disability. *Smith v. Sealed Air Corp.*, 127 N.C. App. 359, 489 S.E.2d 445 (1997).

A disability is "a diminished capacity to earn money rather than physical infirmity," *Arrington v. Texfi Industries*, 123 N.C. App. 476, 478, 473 S.E.2d 403, 405 (1996), and a claimant's "earning capacity" is determined by his ability to compete in the work force, *Estes*, 125 N.C. App. at 300, 480 S.E.2d at 418. "Thus employee ownership of a business can support a finding of earning capacity only to the extent the employee is actively involved in the personal management of that business and only to the extent that those management skills are marketable in the labor market." *Id.*

In the case presently before us, the Commission relevantly concluded as follows:

> 6. [Plaintiff's] earnings from his venture as a distributor for Market America are not "wages" because these earnings are not directly related to the ability of [plaintiff] to engage in full-time employment, nor to any measurable time or effort expended by [plaintiff]. Nor can this be classified as "employment", [sic] as there is [sic] no requirements that [plaintiff] devote any time or effort to this venture. At most, any income from [plaintiff's] venture as a Market America distributor would properly be classified as income for which Defendant would be entitled to be given credit. *Barnhardt vs. Yellow Cab Co.*, 266 N.C. 419[, 146] S.E.2d 479 (1966). Additionally, U.S. Chamber of Commerce statistics show that the majority of newly-created small enterprises fail [sic] as economic entities within the first five years of their life. People do not ordinarily undergo the expense of starting such a risky entrepreneurial experience unless they are unable to obtain a paying job in the real economy. Therefore, creating a new enterprise is more indicative of inability to be employed in the workplace than it is indicative of ability.

Based on this conclusion and this Court's holding in *Estes*, 125 N.C. App. 298, 480 S.E.2d 416, the Commission awarded plaintiff perma-

nent total compensation from 22 April 1996 to the present and continuing for as long as plaintiff "is unable to earn any wages." The Commission made the award "subject to a credit to Defendant for any net earnings from Plaintiff's attempt to become self[-] employed."

The evidence in the record reveals that plaintiff owns a distributorship of a network marketing company called "Market America." Plaintiff works out of his home ten to twenty hours per week and earns $300.00 to $600.00 a month from his own sales and the commissions from sales of distributors he has recruited. Plaintiff testified that in the course of this business, he performs the following tasks:

> I basically make phone calls to different companies and make appointments to come in and talk to them. I also call different people and try to recruit them into the business, and basically just go in homes and show the plan and just try to market the products.

Plaintiff projected that in a year's time, he should be able to earn approximately $30,000 per year.

Although the Commission was well within its authority to find plaintiff's expectation of making a living through this venture "to be a triumph of hope over experience and thus not highly credible," there was no basis whatsoever for the Commission's conclusion that plaintiff's marketing business is not "employment" and that his earnings are not "wages." Furthermore, the evidence shows that plaintiff is "actively involved in the personal management of [his] business," and there is little doubt that plaintiff's "management skills are marketable in the labor market." *See Estes*, 125 N.C. App. at 300, 480 S.E.2d at 418. Therefore, since plaintiff's earning capacity is not "totally obliterated," we conclude that the Commission erred in determining that plaintiff is totally disabled under section 97-29. *See id.*

[3] Lastly, we review defendant's argument that the Commission erred by entering the following conclusion of law:

> While caselaw holds that an injured worker cannot collect both total permanent disability compensation and partial permanent disability compensation *at the same time*, it does not hold that a person who is able to return to work and thus remove himself from total permanent disability compensation cannot thereafter, when the return to work fails because of restrictions resulting from the compensable injury, be entitled to partial permanent disability compensation when he is able to earn some wages but

not as much as he was earning at the time of the compensable injury.

Defendant contends that in so concluding, the Commission impliedly ruled that plaintiff could recover additional benefits for permanent partial disability under section 97-30 or permanent partial impairment under section 97-31. Although the Commission's conclusion is an accurate statement of the law, *see Smith v. American and Efird Mills*, 51 N.C. App. 480, 488, 277 S.E.2d 83, 88 (1981) (recognizing that while "a claimant cannot simultaneously be both totally and partially incapacitated[,]" the language of section 97-30 demonstrates that the General Assembly "envisioned that an employee might receive compensation under both G.S. 97-29 and G.S. 97-30" in the case where a period of " 'partial disability begins after a period of total disability' ") (quoting N.C. Gen. Stat. § 97-30), *modified*, 305 N.C. 507, 290 S.E.2d 634 (1982), we hold that under the circumstances of the instant case, plaintiff is precluded from recovering any partial disability benefits at this juncture.

Pertinently, section 97-30 of the North Carolina General Statutes provides as follows:

Except as otherwise provided in G.S. 97-31, where the incapacity for work resulting from the injury is partial, the employer shall pay, or cause to be paid, as hereinafter provided, to the injured employee during such disability, a weekly compensation equal to sixty-six and two-thirds percent (66⅔%) of the difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter, but not more than the amount established annually to be effective October 1 as provided in G.S. 97-29 a week, and *in no case shall the period covered by such compensation be greater than 300 weeks from the date of injury.* In case the partial disability begins after a period of total disability, the latter period shall be deducted from the maximum period herein allowed for partial disability.

N.C. Gen. Stat. § 97-30 (1991) (emphasis added). Thus, the 300-week period for which a claimant is entitled to partial disability under section 97-30 must include any period during which he has already received total disability under section 97-29. *Brown v. Public Works Comm.*, 122 N.C. App. 473, 470 S.E.2d 352 (1996).

In the case *sub judice*, the injury to plaintiff's back occurred on 30 December 1985. Therefore, the 300-week period for which he

could receive partial disability benefits ran on or about 8 October 1991. The record indicates that plaintiff and defendant entered into a Form 21 Agreement for Compensation following plaintiff's injury and that, pursuant to the 1 July 1992 opinion and award by the Commission, defendant thereafter paid plaintiff total disability benefits from 14 December 1988 to 5 October 1994, when plaintiff became employed at Everette's as a machinist. After 300 weeks had passed from the date of the injury, plaintiff was no longer eligible to receive compensation under section 97-30. *See id.* (recognizing that partial disability can last no longer than 300 weeks from the date of injury).

Likewise, section 97-31 provides as follows regarding impairment of the back:

> In cases included by the following schedule the compensation in each case shall be paid for disability during the healing period and in addition the disability shall be deemed to continue for the period specified, and shall be in lieu of all other compensation, including disfigurement, to wit:

> . . .

> (23) For the total loss of use of the back, sixty-six and two-thirds percent (66⅔%) of the average weekly wages during 300 weeks. The compensation for partial loss of use of the back shall be such proportion of the periods of payment herein provided for total loss as such partial loss bears to total loss, except that in cases where there is seventy-five per centum (75%) or more loss of use of the back, in which event the injured employee shall be deemed to have suffered "total industrial disability" and compensated as for total loss of use of the back.

N.C. Gen. Stat. § 97-31 (1991). In the present opinion and award, the Commission made no findings concerning when plaintiff reached maximum medical improvement; however, the Commission found that "[p]laintiff was last discharged prior to the initial award with a rating of 25-30% permanent partial disability of [the] back." The record reveals that on 27 March 1990, Dr. Wheeler found plaintiff to have reached maximum medical improvement and rated him as having a 27.5% permanent partial disability of his back. Under section 97-31, a 30% impairment of the back would entitle plaintiff to partial disability compensation for 90 weeks from the date on which he

reached maximum medical improvement. Plaintiff, therefore, could not be compensated under section 97-31 beyond 27 June 1990. Accordingly, we hold that by implicitly concluding that plaintiff was entitled to partial disability benefits under section 97-30 or partial impairment compensation under section 97-31, the Commission erred. We have examined defendant's remaining assignments of error and determine them to be without merit.

**[4]** During the pendency of the present appeal, plaintiff filed a motion under the provisions of section 97-88 of the General Statues for an award of counsel fees. Section 97-88, entitled "Expenses of appeals brought by insurers," reads as follows:

> If the Industrial Commission at a hearing on review or any court before which any proceedings are brought on appeal under this Article, shall find that such hearing or proceedings were brought by the insurer and the Commission or court by its decision orders the insurer to make, or to continue payments of benefits, including compensation for medical expenses, to the injured employee, the Commission or court may further order that the cost to the injured employee of such hearing or proceedings including therein reasonable attorney's fee to be determined by the Commission shall be paid by the insurer as a part of the bill of costs.

N.C. Gen. Stat. § 97-88 (1991). While it is true that defendant brought the present appeal, we conclude that the Commission erred in awarding plaintiff continuing benefits under section 97-29. Plaintiff's motion for counsel fees pursuant to section 97-88 is, therefore, denied.

For the above-stated reasons, the opinion and award of the North Carolina Industrial Commission is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

Judges MARTIN and HORTON concur.