KYLE J. LANNING, EMPLOYEE v. FIELDCREST-CANNON, INC., SELF-INSURED, EMPLOYER

No. 360PA99

(Filed 16 June 2000)

**1. Workers' Compensation— wage-earning capacity—test for self-employed injured employee**

The test for determining whether a self-employed injured employee has wage-earning capacity is that the employee: (1) must be actively involved in the day-to-day operation of the business; and (2) must utilize skills which would enable the employee to be employable in the competitive market place notwithstanding the employee's physical limitations, age, education, and experience.

**2. Workers' Compensation— findings of fact—determination by Industrial Commission**

In a workers' compensation case concerning whether plaintiff-employee's income from his multilevel marketing distributorship constitutes wages, the Court of Appeals' opinion is remanded for further findings by the Commission because: (1) the Court of Appeals usurped the Commission's fact-finding role, since the determination of whether plaintiff's management skills are marketable and whether plaintiff is actively involved in the

LANNING v. FIELDCREST-CANNON, INC.

[352 N.C. 98 (2000)]

business' personal management are questions of fact; and (2) the Commission failed to make findings necessary to determine plaintiff's wage-earning capacity.

### 3. Workers' Compensation— total disability—hybrid award— no statutory provision for offsets

Although this issue was not reached by the Court of Appeals, the Industrial Commission erred in a workers' compensation case by crafting a hybrid award which provided for total disability payments under N.C.G.S. § 97-29 to be offset by a credit to defendant for any net earnings from plaintiff's attempt to become self-employed because: (1) offsets of this nature are contrary to the provisions of N.C.G.S. § 97-30, providing for the payment of partial disability benefits; and (2) absent a provision for a statutory offset, N.C.G.S. § 97-30 is applied to plaintiffs who have some wage earning capacity, and are thus, only partially disabled.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 134 N.C. App. 53, 516 S.E.2d 894 (1999), affirming in part and reversing in part an opinion and award of the North Carolina Industrial Commission entered 14 November 1997 and remanding for further proceedings. Heard in the Supreme Court 17 February 2000.

*Carlton, Rhodes & Carlton, by Gary C. Rhodes, for plaintiff-appellant.*

*Smith Helms Mulliss & Moore, L.L.P., by Jeri L. Whitfield and Manning A. Connors, for defendant-appellee.*

PARKER, Justice.

The issue before this Court is whether the Court of Appeals erred in holding that plaintiff-employee's income from his multilevel marketing distributorship constitutes wages and that the Industrial Commission, therefore, erred in determining that plaintiff is totally disabled under N.C.G.S. § 97-29.

On 11 March 1991 a deputy commissioner awarded plaintiff compensation for total disability in the amount of $256.45 per week "for the remainder of his life, his return to work or a change in his condition, whichever first occurs." On 1 July 1992 the Industrial Commission adopted and affirmed the deputy commissioner's opinion and award. Defendant paid total disability benefits to plaintiff

LANNING v. FIELDCREST-CANNON, INC.

[352 N.C. 98 (2000)]

pursuant to the full Commission's opinion and award from 14 December 1988 until 5 October 1994. Plaintiff had returned to full-time employment on or about 5 September 1994.

While working full-time, plaintiff on 10 July 1995 filed with the Commission a motion for modification based on a change of condition, seeking compensation for permanent partial disability pursuant to N.C.G.S. § 97-31. On 21 July 1995 defendant-employer, Fieldcrest-Cannon, Inc., filed a cross-motion seeking an opinion and award reflecting (i) that plaintiff returned to full-time employment at wages greater than he earned at the time of his injury, and (ii) that plaintiff is not entitled to any benefits for permanent partial disability under N.C.G.S. § 97-31.

Defendant requested a hearing to contest plaintiff's motion for modification. A deputy commissioner heard the matter on 5 December 1996, made findings of fact, and concluded that plaintiff, having already received total disability benefits from January 1986 until October 1994,[1] is precluded from electing additional compensation for permanent partial disability. Further, although neither party filed a motion concerning total disability compensation, the deputy commissioner concluded that plaintiff has not experienced a substantial change of condition that entitles him to a reinstatement of total disability benefits. Finally, the deputy commissioner concluded that defendant is entitled to a credit of $894.98 for compensation mistakenly paid to plaintiff while he was employed by Dunning Metal Innovations.

On 14 November 1997 the full Commission reversed the opinion and award "based upon an erroneous interpretation of law and not on any finding of credibility with respect to testimony." The full Commission's findings of fact determined, *inter alia*, the following: Plaintiff is a 36 year old male. Prior to 30 December 1987 he had been employed as a heavy equipment operator, weaver, dump truck driver, and fork lift operator, all of which jobs required a medium to heavy level of exertion and skills learned on the job. Plaintiff completed eight years of education and obtained his GED certificate after he was injured. On 30 December 1985 plaintiff sustained an injury to his

1. The deputy commissioner concluded that plaintiff received compensation for his total disability shortly after plaintiff's original injury forced him to stop working in January 1986. However, the original opinion and award adopted and affirmed by the full Commission in July 1992 ordered defendant to pay plaintiff compensation for total disability in the amount of $256.45 per week beginning on 14 December 1988.

back. Plaintiff underwent two surgeries and undertook physical therapy and work-hardening programs. When plaintiff was discharged from medical treatment, he had a disability rating of 25-30% permanent partial disability to the back.

The Commission further found that in September 1993 plaintiff enrolled in a machinist course at Davidson Community College. After completing this course, plaintiff began working as a machinist with Dunning Metal Innovations on 5 September 1994. The employer's lifting requirements exceeded plaintiff's restrictions, and plaintiff was unable to continue after a month. In October 1994 plaintiff began working full time as a machinist at Everette Machine Company. Plaintiff was able to adapt successfully to this job for over a year because the employer was able to structure plaintiff's job within plaintiff's functional limitations which restricted his ability to sit, stand, and lift. In late 1995 or early 1996, plaintiff's job requirements increased. Plaintiff was promoted to shop foreman; but the growth of Everette's business required plaintiff to perform repetitive lifting in excess of plaintiff's limitations, and the employer was unable to provide plaintiff with the necessary assistance with lifting to assure that plaintiff would be able to perform the job without further injury to his back. Plaintiff's back began bothering him after the job requirements were changed. He lifted seventy-pound sheet metal with a co-employee ten to twenty times a day, and once or twice he lifted the seventy-pound sheet metal by himself. In April 1996 plaintiff suffered a relapse caused by the exertional requirements of the job. The doctor required plaintiff to stay out of work at least temporarily following physical therapy. At this time plaintiff determined that his employer could no longer accommodate the job plaintiff had been performing, and plaintiff did not return to work or seek another machinist job since his restrictions required accommodations that most machinist shops were unlikely to meet. The full Commission made the following further finding of fact:

8. Since April, 1996, Employee-Plaintiff's sole income has been as a marketing representative or distributor for Market America. This venture is described as a "multi-level marketing" approach in which representatives purchase a distributorship, sell products and recruit other distributors. Employee-Plaintiff has been expending approximately 10-20 hours per week in this venture, earning $300.00-$600.00 per month in commissions. If this venture is successful, Employee-Plaintiff hopes to spend less time actively soliciting accounts, as his compensation is based

upon (1) his own sales; [or] (2) commissions based upon sales of [other] distributors he has recruited. The Full Commission takes "judicial" notice that US Chamber of Commerce statistics show that most new small businesses fail within the first five years, and multi-level marketing schemes have a high failure rate. Plaintiff's testimony that he might eventually be able to make a living through this scheme thus is found by the Full Commission to be a triumph of hope over experience and thus not highly credible.

Based on these findings of fact, the Commission made the following conclusions of law among others:

1. NCGS § 97-47 provides in part that, "Upon its own motion or upon the application of any party in interest on the grounds of a change in condition, the Industrial Commission may review any award, and on such review may make an award ending, diminishing, or increasing the compensation previously awarded, subject to the maximum or minimum provided in this Article . . . [.]" Plaintiff has undergone substantial, material changes of condition that entitle him to a reinstatement of disability benefits pursuant to NCGS § 97-29, subject to a credit for net earnings from his self-employment enterprise.

While he was able to go back to work for a time after retraining, the job he performed was not ordinarily available in the open market in that machinists are ordinarily required to do lifting beyond plaintiff's lifting restrictions. Additionally, he ultimately was unable to perform the job because of his earlier compensable injury. The substantial and material change of condition is the inability to continue earning wages at the machinist job because the job changed so that he could no longer do it under his physician's work restrictions coupled with the strong inference that similar jobs within his restrictions were unavailable in the economy.

. . . .

3. Employee-Plaintiff originally elected to seek recovery of compensation under N.C.G.S. § 97-29, and successfully prevailed in establishing that he was totally and permanently disabled according to the holdings of the North Carolina Supreme Court in *Whitley vs. Columbia Lumber Mfg. Co.*, 318 N.C. 89, 348 S.E.2d 336 (1986), and *Peoples vs. Cone Mills Corp.*, 316 N.C. 426, [342]

S.E.2d 798 (1986). This resulted in the Opinion and Award of the Full Commission on July 1, 1992, affirming the Award and Opinion of the Deputy Commissioner on March 11, 1991, both of which were based in part upon a combination of Employee-Plaintiff's exertional limitations in which the Commission found that Employee-Plaintiff lacked the strength and durability to perform work within his residual functional capacity, and in part upon his non-exertional limitations which included Employee-Plaintiff's limited education and learning disability. The Award and Opinion granted Employee-Plaintiff compensation continuing until his "return to work."

4. Employee-Plaintiff thereafter took affirmative steps to overcome his non-exertional limitations through successful completion of a skilled trade course qualifying him as a machinist. During the same period of time, his strength and durability gradually increased to the degree that he became able to sit and stand for the requisite periods of time necessary to perform full time gainful employment on a sustained basis. Through his own efforts, Employee-Plaintiff thereafter successfully returned to work as defined in the Workers' Compensation Act. This event constituted a change of condition creating the presumption that his disability ended. *Tucker vs. Lowde[r]milk*, 233 N.C. [185], 63 S.E.2d 109 (1951), and compensation under the Award was properly terminated.

5. It is important to note that, at this point, Employee-Plaintiff's successful adaptation to full time gainful employment did not arise from an amelioration of Employee-Plaintiff's remaining residual functional capacity, nor otherwise reflect an increase in his remaining functional limitations restricting his ability to lift. The evidence tends to show that once Employee-Plaintiff returned to full-time work, this required him to apply essentially all of []his strength and durability to meet the requirements of his work[] and reduced his ability to engage in normal non-work activities. Furthermore, for Employee-Plaintiff to work at each of his two jobs as a machinist, his employers had to specifically adapt and tailor the job to meet Employee-Plaintiff's restrictions for occasional and repetitive lifting. Neither of these jobs as Plaintiff performed them [was a job] available in significant numbers in the local or national economy. In early 1996, Employee-Plaintiff experienced two further changes in circumstances. First, his employer could no longer adapt or tailor

LANNING v. FIELDCREST-CANNON, INC.

[352 N.C. 98 (2000)]

Employee-Plaintiff's job to Employee-Plaintiff's exertional restrictions. Employee-Plaintiff attempted to continue his employment, but the increased exertion[] directly resulted in a relapse and deterioration of Employee-Plaintiff's medical condition, which caused Employee-Plaintiff to cease work. These substantial and material changes of conditions constitute a recurrence of Employee-Plaintiff's disability cognizable under NCGS § 97-47, which has the following implications: If Employee-Plaintiff is unable to work and earn any wages, he is totally disabled. If he is able to work and earn some wages, he is partially disabled. *Robinson vs. J.P. Stevens and Co.*, 57 N.C. App. 619, 292 S.E.2d 144 (1982). The disability of an employee is to be measured by his capacity or incapacity to earn the wages he was receiving at the time of his injury. *Hill vs. [Du Bose]*, 234 N.C. 446, 67 S.E.2d 371 (1951), *Robinson vs. J.P. Stevens and Co., Supra.*

6. Employee-Plaintiff's earnings from his venture as a distributor for Market America are not "wages" because these earnings are not directly related to the ability of Employee-Plaintiff to engage in full-time employment, nor to any measurable time or effort expended by Employee-Plaintiff. Nor can this be classified as "employment", as there is no requirement[] that Employee-Plaintiff devote any time or effort to this venture. At most, any income from Employee-Plaintiff's venture as a Market America distributor would properly be classified as income for which Defendant would be entitled to be given credit. *Barnhardt vs. Yellow Cab Co.*, 266 N.C. 419[, 146] S.E.2d 479 (1966). Additionally, US Chamber of Commerce statistics show that the majority of newly-created small enterprises fail as economic entities within the first five years of their life. People do not ordinarily undergo the expense of starting such a risky entrepreneurial experience unless they are unable to obtain a paying job in the real economy. Therefore, creating a new enterprise is more indicative of inability to be employed in the workplace than it is indicative of ability.

The Commission awarded plaintiff permanent total compensation at the rate of $256.45 per week from 22 April 1996 and continuing into the future for those weeks in which plaintiff is unable to earn any wages subject to a credit to defendant for any net earnings from plaintiff's attempt to become self-employed. This compensation is to continue until plaintiff obtains a job earning as much as he earned at

the time he was originally injured or until further orders of the Commission. Defendant appealed to the Court of Appeals.

In a unanimous decision, the Court of Appeals reversed the Commission's award of total disability benefits. *Lanning v. Fieldcrest-Cannon, Inc.*, 134 N.C. App. 53, 61, 516 S.E.2d 894, 900 (1999). The Court of Appeals held that the Commission erred in its conclusion that plaintiff's marketing distributorship is not "employment" and that plaintiff's earnings through Market America are not "wages." *Id.* The Court of Appeals also affirmed (i) the Commission's conclusion that plaintiff experienced a substantial change of condition under N.C.G.S. § 97-47, and (ii) the Commission's finding that machinist jobs within plaintiff's physical capacities were not available in the open market and that plaintiff was not likely to enjoy the same accommodations at other machinist jobs as he did at Everette. *Id.* at 59, 516 S.E.2d at 899. However, defendant did not seek, and this Court did not grant, discretionary review of these last two issues. Accordingly, those issues are not before this Court; and the determination of the Court of Appeals becomes the law of the case as to those issues.

The Workers' Compensation Act ("the Act") defines "disability" as the "incapacity because of injury to earn the wages which the employee was receiving at the time of the injury in the same or any other employment." N.C.G.S. § 97-2(9) (1999). "Compensation must be based upon loss of wage-earning power rather than the amount actually received." *Hill*, 234 N.C. at 447-48, 67 S.E.2d at 372. If the wage-earning power is only diminished, the employee is entitled to benefits under N.C.G.S. § 97-30. *See Gupton v. Builders Transp.*, 320 N.C. 38, 42, 357 S.E.2d 674, 678 (1987). If the capacity to earn is "totally obliterated," the employee may recover under N.C.G.S. § 97-29. *See id.* The focus of this determination is not on "whether all or some persons with plaintiff's degree of injury are capable of working and earning wages, but whether plaintiff [him]self has such capacity." *Little v. Anson County Sch. Food Serv.*, 295 N.C. 527, 531, 246 S.E.2d 743, 746 (1978). The earning capacity of an injured employee must be evaluated "by the employee's own ability to compete in the labor market. If post-injury earnings do not reflect this ability to compete with others for wages, they are not a proper measure of earning capacity." *Peoples*, 316 N.C. at 437, 342 S.E.2d at 805-06. The employee's age, education, and work experience are factors to be considered in determining the person's capacity to earn wages. *Little*, 295 N.C. at 532, 246 S.E.2d at 746.

In reviewing an opinion and award from the Industrial Commission, the appellate courts are bound by the Commission's findings of fact when supported by any competent evidence; but the Commissions's legal conclusions are fully reviewable. *See Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 684 (1982). An appellate court "does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965). If the findings of the Commission are insufficient to determine the rights of the parties, the appellate court may remand to the Industrial Commission for additional findings. *See Hilliard*, 305 N.C. at 595, 290 S.E.2d at 684. "The evidence tending to support plaintiff's claim is to be viewed in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence." *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998).

Addressing the issue of whether plaintiff's earnings from his Market America distributorship constitute wages, the Court of Appeals relied on its prior decision in *McGee v. Estes Express Lines*, 125 N.C. App. 298, 480 S.E.2d 416 (1997). In *McGee* the plaintiff-employee sustained an injury to his right knee arising out of and in the course of his employment. At the time of the injury the plaintiff had a part-time tax-filing service which he operated out of his home. Following the injury, the plaintiff expanded the tax-filing service, rented an office outside his home, and employed others to work in the business. The plaintiff worked up to four or five hours a day in the business but had not received any wages from the business and only minimal distribution of profits. In *McGee* the Commission concluded that the defendants did not meet their burden of showing that the plaintiff was actually earning wages and was gainfully employed; hence, the Commission ordered that the defendants continue disability payments. The Court of Appeals, holding that the Commission erred and remanding for reconsideration based on the plaintiff's earning capacity rather than his actual wages, stated the following:

> [A]n employee's earning capacity is based on his ability to command a regular income in the labor market. *See Larson's Workmen's Compensation Law* § 57.51(e) (1996). Thus employee ownership of a business can support a finding of earning capacity only to the extent the employee is actively involved in the per-

sonal management of that business and only to the extent that those management skills are marketable in the labor market. *Id.* (income received from business owned by employee cannot be used to reduce a previously established disability unless the income is the "direct result of the [employee's] personal management and endeavors"). *Peoples*, 316 N.C. at 438, 342 S.E.2d at 806 (emphasizing importance of employee's ability "to earn wages competitively").

*McGee*, 125 N.C. App. at 300, 480 S.E.2d at 418. Thus, the Court of Appeals limited earning capacity through self-employment to situations in which the employee (i) is actively involved in the personal business, and (ii) possesses management skills that enable the employee to compete in the market.

[1] While an employee's management skills may be significant in the operation of certain businesses, such as the tax-filing service managed by the employee in *McGee*, different skills may be relevant to and necessary for the operation of other types of personal businesses. The determinative issue is whether the skills—be they management, computer, accounting, sales, consulting, or something else—utilized by the employee in the active operation of his own business, when considered in conjunction with the employee's impairment, age, education, and experience, would enable the employee to compete in the labor market. *See Peoples*, 316 N.C. at 438, 342 S.E.2d at 806. We hold, therefore, that the test for determining whether the self-employed injured employee has wage-earning capacity is that the employee (i) be actively involved in the day to day operation of the business and (ii) utilize skills which would enable the employee to be employable in the competitive market place notwithstanding the employee's physical limitations, age, education and experience. In the instant case, given plaintiff's exertional limitations, education, and experience, would he be hired to work in the competitive market place?

The Court of Appeals, after noting the amount plaintiff earns and evidence that plaintiff makes phone calls and calls on companies and individuals to sell his product, concluded that

there was no basis whatsoever for the Commission's conclusion that plaintiff's marketing business is not "employment" and that his earnings are not "wages." Furthermore, the evidence shows that plaintiff is "actively involved in the personal management of [his] business," and there is little doubt that plaintiff's "manage-

ment skills are marketable in the labor market." *See Estes,* 125 N.C. App. at 300, 480 S.E.2d at 418.

*Lanning,* 134 N.C. App. at 61, 516 S.E.2d at 900.

**[2]** The determination of whether a disability exists is a conclusion of law that must be based upon findings of fact supported by competent evidence. *See Hilliard,* 305 N.C. at 594-95, 290 S.E.2d at 683. The Court of Appeals was correct that no finding of fact in the Commission's opinion and award supports its conclusion that plaintiff's business is not "employment" and his earnings are not "wages." The Commission's finding of fact number eight quoted above at best expresses the Commission's skepticism at the likelihood of plaintiff's success in this endeavor. The Court of Appeals erred, however, in its determination that plaintiff's management skills are marketable in the labor market and that the evidence shows plaintiff is "actively involved in the personal management of [his] business." Whether plaintiff's management skills are marketable and whether plaintiff is actively involved in the business' personal management are questions of fact. In making these determinations, the Court of Appeals usurped the fact-finding role of the Commission. *See Hilliard,* 305 N.C. at 595, 290 S.E.2d at 683-84 (stating that "the Industrial Commission is the sole judge of the credibility of the witnesses and the weight to be given to their testimony"). As the Commission failed to make findings necessary to determine plaintiff's wage-earning capacity and the rights of the parties, we must reverse the Court of Appeals and remand this action to that court for further remand to the Industrial Commission for findings consistent with the legal principles stated in this opinion.

**[3]** Inasmuch as this case is being remanded to the Industrial Commission, we will also address an issue, raised by defendant but not reached by the Court of Appeals, that may or may not become pertinent on remand. After concluding that plaintiff was totally disabled, the Commission crafted a hybrid award which provided for total disability payments to be offset by a credit to defendant for "any net earnings from [p]laintiff's attempt to become self-employed." Offsets of this nature are not statutorily authorized and are, in fact, antithetical to the provisions of N.C.G.S. § 97-30 providing for the payment of partial disability benefits. Despite its conclusion that plaintiff is entitled to compensation for total disability under N.C.G.S. § 97-29, the Commission in effect awarded plaintiff compensation for partial disability by granting defendant a credit for any net earnings plaintiff might have. An analogous attempt by the Commission to

DEESE v. CHAMPION INT'L CORP.

[352 N.C. 109 (2000)]

adjust benefits was rejected by this Court in *Hendrix*, where then-Justice, later Chief Justice, Mitchell, writing for the Court, noted the inconsistency between the Commission's conclusion that the plaintiff was permanently partially disabled and its award based on total loss of wage-earning capacity reduced only for the weeks the plaintiff actually worked at a restaurant. *See Hendrix v. Linn-Corriher Corp.*, 317 N.C. 179, 190, 345 S.E.2d 374, 381 (1986). While plaintiff's substantial post-injury efforts to become self-sufficient are laudatory, neither this Court nor the Commission is the legislature. Absent a provision for a statutory offset, we continue to apply section 97-30 and its three-hundred-week time limit to plaintiffs who have some wage-earning capacity and are, thus, only partially disabled under the Act. *See Gupton*, 320 N.C. at 42, 357 S.E.2d at 678.

For the foregoing reasons, the opinion of the Court of Appeals is reversed and the case remanded to that court for further remand to the Industrial Commission.

REVERSED AND REMANDED.