***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson. The appealing party has not shown good grounds to reconsider the evidence, to receive further evidence or to rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of Deputy Commissioner Stephenson.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before Deputy Commissioner Stephenson as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendants on November 10, 2000.
3. On November 10, 2000, North Carolina Forestry Mutual Insurance Company was the carrier at risk.
4. Plaintiff's average weekly wage was $331.24, which yields a compensation rate of $220.83 per week.
5. On November 10, 2000, plaintiff sustained a compensable injury to his back which defendants accepted pursuant to a Form 60 dated December 6, 2000.
6. The following exhibits were stipulated into evidence at the hearing before the Deputy Commissioner:
Stipulated Exhibit 1 — Industrial Commission forms
Stipulated Exhibit 2 — medical records of plaintiff
Stipulated Exhibit 3 — surveillance video of plaintiff
Stipulated Exhibit 3a — private investigator's report
 Stipulated Exhibit 4 — Plaintiff's Responses to Defendants' Interrogatories amended through testimony
 Stipulated Exhibit 5 — Defendants' Responses to Plaintiff's Interrogatories
7. Following oral arguments before the Full Commission, plaintiff provided copies of his 2000, 2001 and 2002 tax returns to defendants and the Commission. Both parties expressed concerns about whether the information provided was accurate or complete. Therefore, based on the confusion raised by these documents, the Commission denies defendants' motion to reopen the record to receive these tax returns.
8. The issue before the Full Commission is whether plaintiff is entitled to additional compensation and medical benefits as a result of his injury by accident.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. On November 10, 2000, plaintiff was 41 years old with an eighth grade education and began his employment with defendants as a yardman in April 2000. Plaintiff's duties consisted of lifting and carrying construction supplies weighing 50 to 100 pounds. Plaintiff was required to stand constantly and frequently bend and squat.
2. Prior to going to work for defendants, plaintiff was employed at Guy C. Lee Building Materials and was self-employed in the construction business.
3. After beginning work with defendants plaintiff continued to work side jobs. Plaintiff often worked with another employee of defendants or performing work for defendants or some of its customers. Defendants' store manager, L.G. Fields, was aware that plaintiff and other employees performed side jobs for customers. There was no company policy that prohibited plaintiff from doing this.
4. On Friday, November 10, 2000, plaintiff sustained a compensable injury to his back while lifting a twenty-foot 6 x 6 piece of lumber. Plaintiff sought treatment on November 13, 2000 from Doctor's Urgent Care, where he was diagnosed with lumbar strain and placed on medications and light duty work restrictions. Plaintiff was kept out-of-work through November 26, 2000. Defendants paid plaintiff temporary total disability for this time period.
5. Plaintiff returned to work for defendants on November 27, 2000 with a 20 pound lifting restriction. Plaintiff spent that day sweeping the floor and organizing the molding.
6. On November 28, 2000 plaintiff returned to regular full duty with heavy lifting although the restrictions from Doctor's Urgent Care indicated not to return to full duty until December 1, 2000. On November 29, 2000 plaintiff returned to Doctor's Urgent Care with increased pain in his back since returning to work, with pain going down his right leg. Doctor's Urgent Care then restricted plaintiff to sedentary work until he could be rechecked on December 6, 2000. Plaintiff's employer had no sedentary work or work within plaintiff's restrictions.
7. During the next few days plaintiff worked with Steve Leech, a co-worker at defendants, on a job plaintiff had contracted for outside his employment with defendants. Plaintiff assisted in putting up vinyl siding, which weighed about a pound. After paying Leech, plaintiff made $250.00 from the job.
8. Plaintiff returned to Urgent Care on December 6, 2000 and reported that he experienced modest improvement with tenderness and inflammation over the sacroiliac joint. Plaintiff was released for light duty with a 20 pound weight restriction until he could be reevaluated on December 11, 2000.
9. Plaintiff's supervisor, Jeff Durham, became angry when plaintiff presented the light duty restrictions. Plaintiff was instructed to report to Mr. Fields, the store manager. Mr. Fields told plaintiff to punch out and go home. Mr. Fields told plaintiff he could not work both for defendants and someone else. Mr. Fields' secretary wrote, "quit" on plaintiff's time card. Defendants have presented no credible evidence that work was available within plaintiff's work restrictions. Defendants did not resume temporary total disability payments to plaintiff and only paid temporary total disability from November 11, 2000 through November 26, 2000. Although defendants had no work available within plaintiff's restrictions, defendants did not resume payment of temporary total disability when plaintiff missed work after November 29, 2000.
10. The Full Commission finds by the greater weight of the evidence that plaintiff did not quit, but was terminated from his position by defendants.
11. Plaintiff returned to Doctor's Urgent Care reporting continued problems and radiating pain. Plaintiff was limited to sedentary work and referred to an orthopaedist. Plaintiff was referred to Goldsboro Orpthopaedic which refused to see him due to a $400.00 unpaid bill. Defendants then referred plaintiff to Kinston Orthopaedic which also refused to see him.
12. Finally in March 2001 plaintiff was authorized to see Dr. Ralph Liebelt with Triangle Orthopaedic who treated him on April 25, 2001. Plaintiff showed signs of radiculopathy and was limited to sedentary work.
13. The greater weight of the evidence shows that plaintiff was temporarily and totally disabled beginning November 26, 2000.
14. It was not until the hearing before the Deputy Commissioner in October 2001 that defendants agreed to allow an evaluation and treatment by Dr. Lestini.
15. Plaintiff saw Dr. Lestini on December 18, 2001. Dr. Lestini ordered an MRI which revealed a significantly degenerative collapsed herniated disc. Dr. Lestini recommended discography prior to surgery, but defendants refused to authorize plaintiff's surgery.
16. Since plaintiff's injury in November 2000, plaintiff has not been able to perform work involving constant bending and squatting or heavy lifting of 50 to 100 pounds.
17. Since plaintiff's injury in November 2000, plaintiff contracted for six side jobs for which he received approximately $1,500.00 after paying for materials and helpers. Prior to his November 10, 2000 injury, plaintiff was able to perform this kind of work himself. Since the injury, he has hired others to perform the work while he supervises.
18. In January 2002 plaintiff's wife bought a business called Rainbow Tire. Plaintiff's wife is regularly employed elsewhere and hired three men to work at Rainbow Tire. Plaintiff went to Rainbow Tire on a daily basis to check on things for his wife. He watched to make sure the employees were keeping the books correctly, and on occasion he went to pick up used tires weighing six to seven pounds. He did not change the tires, repair the tires, or supervise his wife's other employees in their work.
19. The Full Commission finds the surveillance evidence offered by defendants corroborates plaintiff's testimony that he is unable to lift 50 to 100 pounds and is unable to perform construction or tire work on his own. Plaintiff now has to supervise or direct others when he is involved in these activities. Most of the time on the video plaintiff is seen standing idly around. The activities plaintiff performs are within his restrictions. Plaintiff is not paid for any of his time spent at his wife's business and can coordinate his activities around the severity of his pain. Plaintiff may come and go as he pleases and has no set hours, except basically being present to lock and unlock the store.
20. Due to plaintiff's pain, treatment and work restrictions, the Full Commission finds it would have been futile for plaintiff to try to look for other work after he was terminated by defendants.
21. Taking into account plaintiff's work restrictions, education, limited work experience and need for medical treatment, plaintiff has been unable to earn the same wages he was earning at the time of the injury in the same or any other employment from November 29, 2000 to the present.
22. Plaintiff has not reached maximum medical improvement. The treatment recommended by Dr. Liebelt and Dr. Lestini was reasonable and necessary to effect a cure, give relief, and lessen the period of plaintiff's disability.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On November 10, 2000, plaintiff sustained a compensable injury to his back arising out of and in the course of his employment with defendants. N.C. Gen. Stat. § 97-2(6).
2. Defendants admitted compensability of plaintiff's injury by accident by filing a Form 60 on December 6, 2000. However, the Form 60 does not create a presumption of continuing disability and therefore the burden of proving disability remains with plaintiff. Sims v. Charmes/Arby's RoastBeef, 142 N.C. App. 154, 542 S.E.2d 277 (2001)
3. In order to meet the burden of proving disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). In this claim, defendants have refused to authorize the medical treatment recommended by plaintiff's treating physician and plaintiff has been unable to work in any regular employment. Plaintiff has met his burden to show that he continues to have disability. N.C. Gen. Stat. §§ 97-2(9); -29; Russell V. LowesProduct Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
4. As a result of plaintiff's injuries, plaintiff is entitled to temporary total disability at the rate of $220.83 per week from November 29, 2000 and continuing until further order of the Commission, less a $1,500.00 deduction for wages plaintiff earned during this period. N.C. Gen. Stat. § 97-29.
5. Plaintiff is not involved in the day to day operation of his wife's business and is not utilizing skills that enable him to be employable in the competitive marketplace. N.C. Gen. Stat. §§ 97-29, 97-30, Lanningv. Fieldcrest-Cannon, Inc. 352 N.C. 98, 530 S.E.2d 54 (2000). Therefore, plaintiff's presence at his wife's tire business does not constitute employment and does not show any wage earning capacity. Id.
6. Plaintiff is entitled to have defendants pay all medical expenses incurred by plaintiff as a result of his compensable injury for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay temporary total disability to plaintiff of $220.83 per week from November 29, 2000 and continuing until further order of the Commission, subject to a $1,500.00 credit for wages earned. Those amounts which have accrued shall be payable in a lump sum.
2. A reasonable attorney's fee of twenty-five percent (25%) of the lump sum compensation awarded plaintiff in Paragraph 1 of this AWARD is hereby approved for plaintiff's counsel and shall be deducted from those sums due plaintiff and payable directly to plaintiff's counsel. Thereafter, every fourth check shall be directly payable to plaintiff's counsel.
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of his compensable injury on November 10, 2000.
4. Defendants shall pay the costs.
5. All other portions of the July 30, 2003 Opinion and Award shall STAND AS WRITTEN.
This the ___ day of August 2003.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/kjd