JENNIE HUGHES, Plaintiff-Employee,
v.
FRITO LAY, INC., Defendant-Employer, and
RSKCO, Defendant-Carrier.
No. COA04-1503
North Carolina Court of Appeals
Filed February 21, 2006
This case not for publication
North Carolina Industrial Commission I.C. File No. 207477.
Tania L. Leon, P.A, by Tania L. Leon, for plaintiff-appellee/cross-appellant.
Young Moore and Henderson P.A., by Michael W. Ballance, for defendant-appellants/cross-appellees.
BRYANT, Judge.
Defendants Frito Lay, Inc. and RSKCO (defendants) and plaintiff Jennie Hughes appeal from an Opinion and Award of the North Carolina Industrial Commission awarding plaintiff ongoing total disability benefits and medical treatment. We affirm the Commission's Opinion and Award in part, reverse in part and remand for further findings regarding the causation and impact of plaintiff's psychological and physical conditions.

Facts and Procedural History
Plaintiff had been an employee of defendant, Frito Lay, Inc., for fifteen years at the time of her compensable accident on 28 August 2001 when she fell between two to ten feet onto a concrete floor as she was climbing on a ladder to a platform seven to twelve feet above the floor. As a result of her fall, she sustained a hairline fracture to the radial head of her right elbow, contusions to her right hip, wrist, hand, arm, shoulder and back. She also suffered pain to her lower extremities.
Defendants accepted her claim as compensable and began paying plaintiff's medical treatment and weekly workers' compensation benefits at $620.00, the maximum compensation rate for 2001. Plaintiff worked on restricted duty for various periods from October 2001 through June 2002. She again began receiving workers' compensation benefits in June 2002, and never returned to her pre-injury job.
On 30 August 2001 plaintiff began receiving treatment from Dr. David DuPuy, an orthopedist. During plaintiff's work attempts, she began experiencing increased pain and feelings of frustration, depression and anxiety because she felt that she could not physically perform even the modified duties expected of her. Despite plaintiff's complaints of pain, Dr. DuPuy restricted plaintiff to a light duty position and increased her physical restrictions.
On 8 January 2002, plaintiff saw Dr. DuPuy still complaining of moderate pain in her right upper extremity making it difficult for her to work, reported decreased strength, and requested are ferral to a neurologist. Dr. DuPuy denied this request and instead increased her light duty restrictions.
Plaintiff returned to Dr. DuPuy on 5 February 2002 still complaining of pain and significant emotional problems. Dr. DuPuy recommended plaintiff continue reporting to work and indicated there was an "extreme subjective emotional overlay involved with this whole case." Dr. DuPuy also referred plaintiff for a Functional Capacity Evaluation (FCE). The results of the FCE showed plaintiff gave consistent effort throughout the testing and concluded she could do light duty work with frequent floor to knuckle lifting of twelve pounds, knuckle to shoulder lifting of nine pounds, shoulder to overhead lifting of six pounds and carrying ten pounds fifty feet with pivoting.
On 12 February 2002, plaintiff sought psychological counseling from Susan Vigeant and Dr. Kenneth Carter of Rock Hill Psychiatric Consultants. Plaintiff complained of depression and a desire to "get back to being myself" and reported these symptoms of depression began when she "felt powerless to assure proper treatment" regarding her work related injury. Plaintiff was diagnosed with severe depressive disorder and panic disorder and prescribed Wellbutrin, Serzone, Sonata, and Klonopin. Dr. Carter testified that although plaintiff had other stressors in her life, her psychiatric symptoms were causally related to her August 28, 2001 injury by accident. Dr. Carter also opined that plaintiff was not capable of returning to work due to her impaired concentration and focus. On 23 May 2002, plaintiff filed a Motion to Change Treating Physician and to Designate Medical Treatment. Plaintiff's motion was granted by Order filed 26 June 2002, wherein Special Deputy Commissioner Myra L. Griffin ordered defendants to provide plaintiff with a one-time evaluation by a physician of her choice, however plaintiff's request for psychological treatment was denied. Plaintiff subsequently saw Dr. Neal Taub on 9 July 2002 and on 23 July 2002 filed a Motion to Change Treating Physician in order to pursue the treatment recommendations set forth by Dr. Taub.
Dr. Taub is a medical specialist in the field of physical medicine and rehabilitation. Dr. Taub's impression was that plaintiff had persistent right shoulder, hip and knee pain with probable myofascial pain syndrome, all related to her 28 August 2001 injury by accident.
Plaintiff continued seeing Dr. DuPuy, complaining of pain, and on 12 August 2002, Dr. DuPuy stated that plaintiff could return to work with no restrictions. Dr. DuPuy assigned a fifteen percent permanent partial disability rating to plaintiff's right arm, and no permanent impairment to any other body part.
Defendants filed an Application to Terminate or Suspend Payment of Compensation on 12 September 2002, claiming plaintiff's treating orthopedist, Dr. David DuPuy, had released plaintiff to return to work full time without restriction on 12 August 2002 and found her to be at maximum medical improvement. On 16 September 2002 Deputy Commissioner Adrian A. Phillips granted plaintiff's motion to change her treating physician. Defendants appealed Deputy Commissioner Phillips' Order on 20 September 2002, claiming the Order was unsupported by the medical evidence, and as an admitted claim, defendants were entitled to direct plaintiff's care. On 14 November 2002, Special Deputy Commissioner Matthew D. Harbin denied defendants' Application to Terminate or Suspend Payment of Compensation and ordered defendants to pay for all medical treatment ordered by Dr. Taub. Defendants appealed Deputy Commissioner Harbin's Order on 21 November 2002. Plaintiff appealed Deputy Commissioner Griffin's denial of her request for psychological treatment on 4 February 2003.
This matter was then heard before Deputy Commissioner Bradley W. Houser on 20 February 2003. In his Opinion and Award of 12 December 2003, Deputy Commissioner Houser awarded plaintiff ongoing total disability compensation at the rate of $620.00 per week from 7 March 2002 and continuing; and ordered defendants to pay for all related medical expenses for treatment by Dr. Taub and plaintiff's psychological treatment by Dr. Carter. Defendants appealed to the Full Commission.
On 27 August 2004, the Full Commission entered an Opinion and Award affirming the Opinion and Award of Deputy Commissioner Houser, with modifications. The Full Commission awarded plaintiff total disability compensation at the rate of $620.00 per week from 7 March 2002 through the present and continuing. The Commission also ordered defendants to pay for all related medical expenses incurred or to be incurred by plaintiff for the treatment of her back, right knee, right hip, right arm, right shoulder, and psychological condition as long as such treatment is reasonably required to effect a cure, give relief, and/or lessen plaintiff's disability. Defendants appealed to the Court of Appeals on 16 September 2004. Plaintiff appealed to the Court of Appeals on 22 September 2004.
On appeal, defendants raise five issues: (I) whether the Commission's Opinion and Award is inherently contradictory and in error as to the causation of plaintiff's psychological problems; (II) whether the Commission applied the wrong burden of proof concerning the cause of plaintiff's physical problems; (III) whether the Commission erred in finding plaintiff was totally disabled because of her work-related injury; (IV) whether the Commission erred in concluding plaintiff was entitled to ongoing total disability benefits because defendants failed to offer plaintiff any job after her completion of jury duty in June of 2002; and (V) whether the Commission erred in concluding plaintiff was entitled to a change of her treating physician. Plaintiff cross-appeals raising three issues involving the Commission's findings regarding plaintiff's psychological problems.

Standard of Review
Review by this Court of a decision by the North Carolina Industrial Commission is limited to the determination of "whether any competent evidence supports the Commission's findings of fact and whether [those] findings . . . support the Commission's conclusions of law." Deese v. Champion Int'l Corp., 352 N.C. 109,116, 530 S.E.2d 549, 553 (2000). The Commission's findings of fact are conclusive on appeal even where there is contrary evidence, and such findings may only be set aside where there is a "complete lack of competent evidence to support them." Johnson v. Herbie's Place, 157 N.C. App. 168, 171, 579 S.E.2d 110, 113 (2003) (citation and quotations omitted); see also Adams v. AVX Corp., 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998). Our review "'goes no further than to determine whether the record contains any evidence tending to support the finding.'" Id. (quoting Anderson v. Lincoln Constr. Co., 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)). "[E]vidence tending to support plaintiff's claim is to be viewed in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence." Id. (citing Doggett v. South Atl. Warehouse Co., 212 N.C. 599, 194 S.E. 111 (1937)); see also Hollman v. City of Raleigh, 273 N.C. 240, 252, 159 S.E.2d 874, 882 (1968) ("[O]ur Workmen's Compensation Act should be liberally construed to effectuate its purpose to provide compensation for injured employees . . ., and its benefits should not be denied by a technical, narrow, and strict construction."). However, the Commission's conclusions of law are reviewed de novo. McRae v. Toastmaster, Inc., 358 N.C. 488, 496, 597 S.E.2d 695, 701 (2004).

I
Defendants argue (Arguments I and III in defendant-appellants' brief) the Commission's Opinion and Award is inherently contradictory on the issue of psychological causation and that the Commission erred by finding and concluding plaintiff's psychological condition was causally related to her elbow injury. Plaintiff cross-appeals arguing (Arguments I, II and III in plaintiff-appellant's brief) the Commission erred in finding plaintiff's psychological problems are not disabling and in finding and concluding that defendant's have met their burden of showing plaintiff's psychological problems are not the result of her original compensable injury. Because both parties' arguments as to psychological causation are interrelated, we review them together.
"[A]lthough the Commission `is not required . . . to find facts as to all credible evidence . . . the Commission must find those facts which are necessary to support its conclusions of law[.]'" Pomeroy v. Tanner Masonry, 151 N.C. App. 171, 178, 565 S.E.2d 209, 214 (2002) (quoting Peagler v. Tyson Foods, Inc., 138 N.C. App. 593, 602, 532 S.E.2d 207, 213 (2000)). "If the findings of the Commission are insufficient to determine the rights of the parties, the appellate court may remand to the Industrial Commission for additional findings." Lanning v. Fieldcrest-Cannon, Inc., 352 N.C. 98, 106, 530 S.E.2d 54, 60 (2000). See also Harrell v. Harriet & Henderson Yarns, 314 N.C. 566, 575, 336 S.E.2d 47, 52 (1985) (where Commission makes "inconsistent fact findings, . . . the proper course is to remand the case to the Commission"); Neal v. Leslie Fay, Inc., 78 N.C. App. 117, 119, 336 S.E.2d 628, 630 (1985) ("[t]hough this appeal raises [certain] questions they cannot be determined because the Commission's findings of fact and conclusions of law are inconsistent and contradictory, some of which support and some of which undermine the decision made").
In the instant case, the Commission made the following pertinent findings of fact:
25. Based upon the greater weight of the evidence, plaintiff's need for treatment for her psychological problems, which, according to Dr. Carter, primarily related to her frustration with efforts to return her to work and her lack of control over her medical care and return-to-work situation, flowed directly from, and was a direct and natural result of conditions related to her compensable injury. Plaintiff's psychological problems were not disabling. Plaintiff continued to work while receiving psychiatric consultations and by 26 July 2002, her generalized anxiety disorder had nearly resolved. No weight is given to Dr. Carter's opinion that plaintiff was not capable of returning to work due to impaired concentration and focus.
(Emphasis added.) This finding of fact is inherently contradictory to the Commission's Conclusion of Law Number Two:
2. Because the compensability of plaintiff's original injury is not in dispute, defendants have the burden of proving that plaintiff's musculoskeletal problems, including pain in her back, knee, hip, arm, and shoulder are not the result of or causally related to her original injury by accident. Parsons v. Pantry, Inc., 126 N.C. App. 540, 485 S.E.2d 867 (1997). Based on the greater weight of the evidence, defendants have met this burden only as to plaintiff's psychological problems.
(Emphasis added.) However, in its Conclusion of Law Number Five, the Commission went on to hold:
5. Plaintiff is entitled to the payment of medical expenses incurred or to be incurred for the treatment of the injury to her back, right knee, right hip, right arm, and right shoulder and her psychological condition related to her injury so long as such treatment is reasonably required to effect a cure, give relief, and/or lessen plaintiff's disability.
(Emphasis added.)
Because it is not possible to divine the true intent of the Commission based upon the record before this Court, we must remand this issue back to the Commission so that it may make proper findings of fact that are not inherently contradictory and that adequately support its conclusions of law.

II
Defendants next argue the Commission applied the wrong burden of proof concerning the cause of plaintiff's physical problems. In its Conclusion of Law Number Two, the Commission held:
2. Because the compensability of plaintiff's original injury is not in dispute, defendants have the burden of proving that plaintiff's musculoskeletal problems, including pain in her back, knee, hip, arm, and shoulder are not the result of or causally related to her original injury by accident. Parsons v. Pantry, Inc., 126 N.C. App. 540, 485 S.E.2d 867 (1997).
Under Parsons, a claimant is not required to re-prove causation each time she seeks treatment for the very injury that the Commission has previously determined to be the result of a compensable accident. Parsons at 542, 485 S.E.2d at 869. Defendants argue that Parsons only applies where the issue is treatment for the same body part which has previously been found compensable by the Commission, and where there has been no prior Award or ruling by the Commission on causation the burden of proof remains with plaintiff. See Porter v. Fieldcrest Cannon, Inc., 133N.C. App. 23, 27-28, 514 S.E.2d 517, 521 (1999) (plaintiff has the burden of establishing a causal relationship between a work-related incident and her medical conditions where her claim has not been approved by the Commission).
Defendants have stipulated that plaintiff sustained a compensable injury by accident on 28 August 2001, but defendants contend only the fracture to plaintiff's elbow was accepted as compensable. Plaintiff was diagnosed and treated for strain to her back, right hip, and right knee by defendant's chosen treating physician, Dr. DuPuy as early as 14 September 2001 which Dr. DuPuy noted arose out of an employment-related accident. Defendants paid for all treatments with Dr. DuPuy and never denied the compensability of these conditions. Furthermore, Dr. Taub stated that in his opinion, plaintiff's musculoskeletal pain arose out of her fall in August 2001.
While an employer does not accept liability for an employee's injuries merely because the employer directs medical treatment; see Harrison v. Lucent Techs., 156 N.C. App. 147, 153, 575 S.E.2d 825, 828-29 (2003); there is competent evidence on the record before this Court supporting the Commission's finding that plaintiff's musculoskeletal problems, including pain in her back, knee, hip, arm, and shoulder, are in fact the result of or causally related to her original injury by accident. Thus, plaintiff is entitled to the Parsons presumption and the Commission properly applied the burden of proof to defendants to show plaintiff's physical problems were not causally related to her original injury. This assignment of error is overruled.

III
Defendants next claim the Commission erred when it found plaintiff was totally disabled because of her injury at work. In the context of workers' compensation, disability is defined as the "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (2005). "The determination of whether a disability exists is a conclusion of law that must be based upon findings of fact supported by competent evidence." Lanning v. Fieldcrest-Cannon, Inc., 352 N.C. 98, 108, 530 S.E.2d 54, 61 (2000).
[I]n order to support a conclusion of disability, the Commission must find: (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury.
Hilliard v. Apex Cabinet Co., 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982) (citing Watkins v. Cent. Motor Lines, Inc., 279 N.C. 132, 181 S.E.2d 588 (1971)).
The burden is on the employee to show that she is unable to earn the same wages she had earned before the injury, either in the same employment or in other employment. Id. This burden may be met in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.
Russell v. Lowes Prod. Distribution, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (citations omitted).
In support of its conclusion that plaintiff is totally disabled, the Commission found plaintiff established the first of the above Lowe's factors:
27. As a result of her 28 August 2001 injury by accident to her back, right knee, right hip, right arm, and right shoulder and related conditions, plaintiff has been unable to earn wages in any position with defendant-employer or in any other employment for the period from 7 March 2002 though the present and continuing.
The Commission went on to conclude:
4. As a result of her 28 August 2001 injury by accident and related conditions, plaintiff is entitled to be paid by defendants ongoing total disability compensation at the rate of $620.00 per week for the period of 7 March 2002 through the present and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
As discussed in Issue II, supra, there is competent evidence supporting the Commission's finding that plaintiff's physical conditions are the result of, or causally related to, plaintiff's original injury by accident. However, there is no competent evidence in the record before this Court to support the Commission's findings and conclusion that plaintiff "has been unable to earn wages in any position with defendant-employer or in any other employment" solely because of her physical conditions, and is therefore totally disabled. Both Dr. DuPuy and Dr. Taub testified that plaintiff was capable of performing work within the limits established by the FCE. There is substantial evidence in the record before this Court showing plaintiff has restrictions as to the work she is able to perform and that plaintiff cannot perform her previous job under these restrictions. However, it is unclear from the record whether plaintiff has shown that, due solely to her physical conditions, she is unable to earn the same wages she had earned before the injury, either in the same employment or in other employment.
The only support found in the record for an award for total disability is Dr. Carter's opinion that plaintiff was not capable of returning to work due to her impaired concentration and focus. As discussed above, the Commission's findings regarding plaintiff's psychological disability are inconsistent and cannot support a finding of total disability. As the Commission's findings on plaintiff's disability are inconsistent, and it is unclear from the record before this Court whether plaintiff met her burden of establishing her ongoing total disability, we must also remand this issue back to the Commission so that it may make proper findings of fact that adequately support its conclusions of law.

IV
Defendants next argue the Commission erred in concluding plaintiff was entitled to ongoing total disability benefits because defendants failed to offer plaintiff any job after her completion of jury duty in June of 2002. Plaintiff argues the Commission properly found she was totally disabled because defendant did not offer her suitable employment within the physical work restrictions established by Dr. Taub. Plaintiff asks this Court to hold that an employer's failure to offer suitable employment to an injured employee may be used by the Commission as a basis for finding plaintiff is totally disabled.
The burden is on plaintiff to establish her disability and once established, the burden then shifts to the employer to show the employee has refused suitable employment without justification whereby compensation can then be denied. Johnson v. S. Tire Sales & Serv., 358 N.C. 701, 708-09, 599 S.E.2d 508, 513-14 (2004). In the instant case, it is unclear whether plaintiff met her initial burden and so whether suitable employment was offered or refused is not at issue. Therefore, as in Issue III, supra, we remand this issue back to the Commission to determine whether, after making proper findings of fact as to disability, this issue is relevant.

V
By Order filed 16 September 2002, the Executive Secretary's office allowed plaintiff to change treating physicians from Dr. DuPuy to Dr. Taub. Defendants contend the Commission erred by finding plaintiff was entitled to a change of treating physicians. Defendants claim plaintiff purposefully sabotaged the treatment relationship so she could seek treatment from a doctor recommended by her attorney; the treatment provided by Dr. Taub was neither necessary nor reasonable and did not facilitate any demonstrable rehabilitation or recovery; and that Dr. Taub specifically testified he had nothing more medically to offer plaintiff. Defendants argue they should not be required to pay for Dr. Taub's past treatment, and that the Commission's award ordering defendants to pay for current and future treatment is an abuse of discretion and must be reversed. We disagree.
"The Commission may at any time upon the request of an employee order a change of treatment and designate other treatment suggested by the injured employee subject to the approval of the Commission, and in such a case the expense thereof shall be borne by the employer . . . ." N.C. Gen. Stat. § 97-25 (2005). "The unambiguous language of this statute, thus, leaves the approval of a physician within the discretion of the Commission and the Commission's determination may only be reversed upon a finding of a manifest abuse of discretion." Franklin v. Broyhill Furniture Indus., 123 N.C. App. 200, 207, 472 S.E.2d 382, 387 (1996). If the Commission approves a plaintiff's choice of treating physicians, and if the treatment sought is to effectuate a cure or rehabilitation, then the employer has a statutory duty under this section to pay for the treatment. Forrest v. Pitt County Bd. of Educ., 100 N.C. App. 119, 126, 394 S.E.2d 659, 663 (1990). The Commission made the following findings of fact in support of its conclusion that Dr. Taub is plaintiff's authorized treating physician:
19. On 9 July 2002, upon an Order by the Commission, plaintiff was examined by Dr. Neal Taub, a medical specialist in the field of physical medicine and rehabilitation. Based upon his initial examination, Dr. Taub found that plaintiff had persistent right shoulder, hip and knee pain with probable myofascial pain syndrome. Dr. Taub testified that plaintiff's musculoskeletal problems, including the pain in her back, knee, hip, arm, and shoulder are related to her 28 August 2001 injury by accident. Dr. Taub also opined that plaintiff's depression and anxiety were related to her 25 August injury by accident. Dr. Taub further opined that: (a) plaintiff was capable of working within the restrictions outlined in the FCE; (b) plaintiff needed additional physical therapy; and (c) plaintiff had not reached maximum medical improvement.
20. As of 12 August 2002, Dr. DuPuy released plaintiff to return to her full duties in her former position with defendant-employer. Dr. DuPuy opined that plaintiff reached maximum medical improvement on 5 February 2002 with a fifteen percent (15%) permanent partial disability rating to her right arm, and no permanent impairment to any other body part. Additionally, Dr. DuPuy opined that plaintiff's psychological symptoms and physical conditions beyond the hairline fracture of the right elbow radial head and some initial right hip, arm, and back bruising, were not caused by, aggravated by, or related to plaintiff's injury by accident of 28 August 2001.
21. On 10 January 2003, Dr. Taub prescribed physical and aquatic therapy for plaintiff, which improved her symptoms. Additionally, Dr. Taub prescribed the use of a TENS unit, which also improved plaintiff's symptoms. Dr. Taub testified that plaintiff would continue to experience chronic pain requiring medication or other treatment.
22. Based on the greater weight of the evidence, plaintiff has lost confidence in Dr. DuPuy as her treating physician. Additionally, the evidence shows that plaintiff's conditions and symptoms have improved under the treatment regime provided by Dr. Taub, whose designation as plaintiff's authorized treating physician is approved by the Full Commission.
Competent evidence exists on the record to support each of the Commission's findings of fact regarding Dr. Taub. There is no indication the Commission abused its discretion in allowing plaintiff to change treating physicians. This assignment of error is overruled.
Affirmed in part; reversed in part and remanded for further findings.
Judges McCULLOUGH and TYSON concur.
Report per Rule 30(e).