CALABRIA, Judge.
Melchor Zapata Dominguez ("plaintiff")[1] appeals from an Opinion and Award by the Full Commission of the North Carolina Industrial Commission ("the Commission") terminating his temporary total disability benefits and granting Francisco Dominguez Masonry, Inc. ("Dominguez Masonry") and Builders Mutual Insurance Company ("Builders Mutual") (collectively, "defendants") a credit for benefits paid after 31 March 2010. We affirm.
I. Background
From 1993 to 2004, plaintiff was employed by Dominguez Masonry as a brick mason, laying brick for floors and foundations of residential and commercial buildings in Raleigh, Cary, and the surrounding areas. In December 2004, plaintiff was kneeling while laying pavers. When he stood up, he felt a sharp pain in his right knee and noticed it was swollen. Plaintiff stopped performing the paver work and spent the rest of the day supervising other workers and performing light work.
Plaintiff timely filed a Form 18, Notice of Accident to Employer, indicating that he was experiencing pain and swelling in his right knee. In February 2005, plaintiff sought treatment from Dr. Douglas L. Gollehon ("Dr.Gollehon"), a board-certified orthopaedic surgeon, and Dr. Gollehon performed arthroscopic surgery on plaintiff's right knee on 13 April 2005. On 14 May 2007, the Commission filed an Opinion and Award concluding that plaintiff suffered from two compensable occupational diseases in his right knee, articular damage and synovitis. The Commission awarded plaintiff medical expenses, and reserved the issues of total and partial disability compensation "for subsequent determination upon the filing of a new Form 33 Request for Hearing."
Plaintiff started his own company, ILC Masonry ("ILC"), in 2006. ILC became a regular subcontractor for Dominguez Masonry, and Dominguez Masonry used ILC for multiple projects after 2010. However, plaintiff had to limit his physical work activities because of his inability to kneel, squat, or bend his right knee.
On 19 June 2007, Dr. Gollehon opined that plaintiff was at maximum medical improvement, and assigned a 12% permanent partial impairment rating to plaintiff's right leg. Plaintiff and defendants executed a Form 21, Agreement for Compensation for Disability, in which defendants agreed to pay plaintiff compensation for his permanent partial impairment rating at the rate of $329.24 per week for 24 weeks. The Form 21 was approved by the Commission on 3 June 2008.
Plaintiff underwent a second arthroscopic surgery on 1 February 2010. As a result of this second surgery, defendants initiated payment of temporary total disability benefits at the average weekly wage and compensation rates listed in the Form 21 Agreement, in the amount of $329.24 per week. On 22 March 2010, after Dr. Gollehon released plaintiff to return to full duty work without restrictions, defendants filed a Form 24, Application to Terminate or Suspend Payment of Compensation, which Special Deputy Commissioner Emily M. Baucom disapproved.
On 17 May 2010, defendants filed a Form 28T and terminated plaintiff's wage compensation as of 31 March 2010. Plaintiff subsequently filed a motion to compel weekly payments of temporary total disability. On 8 July 2010, the Commission entered an Administrative Order requiring defendants to reinstate temporary total disability compensation.
Defendants filed a Form 33, Request for Hearing, on 15 August 2012, and a Form 24 application to terminate plaintiff's temporary total disability compensation on 11 October 2012. After a hearing, Deputy Commissioner Keischa M. Lovelace filed an Opinion and Award granting defendants' request to terminate plaintiff's temporary total disability compensation as of 31 March 2010. Plaintiff appealed to the full Commission.
On 31 July 2014, the Commission entered an Opinion and Award finding that as of 31 March 2010, plaintiff had regained the capacity to earn at least partial wages by working as a masonry supervisor. The Commission specifically found that although plaintiff asserted he did not perform any work or earn any wages from ILC after 1 February 2010, he still described himself as the "crew leader" and testified that he "take[s] care mostly of the job in the field." The Commission also found:
17. Defendants conducted surveillance from August 30, 2010 through March 14, 2013. Beginning in October 2012, Plaintiff was observed over a period of six days, during which time he was shown using a pulley system to raise cement buckets to scaffolding, carrying and reviewing blueprints or building specifications, talking to his employees or on the telephone, inspecting and repairing a cement mixer, tying together pieces of 2 x 4 lumber to make a masonry form, cleaning the job site by picking up construction debris such as empty bags and cinder block straps, lifting construction debris overhead to place in a dumpster, scraping the top of a foundation with a masonry tool, and signing delivery forms. Plaintiff was not observed performing duties on the job site outside of his permanent work restrictions during the surveillance period. Plaintiff was not observed performing any significant kneeling, squatting, crawling, or heavy lifting, laying brick, pushing a wheelbarrow, or any other physical labor typically required of a brick mason. Based upon a preponderance of the evidence in view of the entire record the Full Commission finds that the duties performed by Plaintiff for ILC Masonry after February 2010 were consistent with those of a crew leader or supervisor. Based upon a preponderance of the evidence in view of the entire record, the Full Commission finds that Plaintiff has been actively engaged in the day to day operations of ILC Masonry since March 31, 2010.
...
23. Plaintiff continued to work as a subcontractor for Defendant-Employer after December 20, 2004. Beginning in 2006, Plaintiff continued this work through his and his wife's company, ILC Masonry, LLC. As his knee got worse, Plaintiff had to limit his physical work activities even before the February 2010 surgery because of his inability to kneel, squat, or bend his right knee. There had been no contention prior to the February 2010 surgery, when Plaintiff concedes he was employed and was not receiving temporary total disability benefits, that this job was not suitable employment. Based upon a preponderance of the evidence in view of the entire record, the Full Commission finds that Plaintiff returned to suitable employment as a masonry supervisor and work crew leader for ILC Masonry as of March 31, 2010. Given the fact that Plaintiff was working for Defendant-Employer as a subcontractor on the date of injury, Plaintiff has essentially continued to work for the employer of injury, just under a different subcontractor arrangement since Plaintiff and his wife formed ILC Masonry in 2006.
While [forensic accountant Earl Ray Hopper] is not a vocational expert, he aptly noted that "someone who has developed those kinds of relationships with customers and that has continued to endure with those relationships over a period of years and can supervise a team as he's been able to do, ... that's a very valuable person indeed." Given the length of time that Plaintiff has been able to maintain his subcontracting arrangement with Defendant-Employer and the relative financial success he has had while doing so, the Full Commission finds that Plaintiff is utilizing skills which would enable him to be employed in the competitive market place.
...
26. The Full Commission finds that it is impossible to state with any certainty how much Plaintiff has earned by virtue of his work for his company in any given year since 2006 because of ILC Masonry's financial accounting practices. However, it is clear that as of March 31, 2010, Plaintiff had regained the capacity to earn at least partial wages, compared to what he was earning at the time of the injury, by working as a masonry supervisor.
Based on its findings, the Commission concluded that plaintiff "has been actively involved in the day to day operations of ILC Masonry and has utilized skills that would enable him to be employable in the competitive market place notwithstanding his permanent work restrictions and considering his age, education and experience." The Commission also concluded that since plaintiff returned to work following his 1 February 2010 surgery, defendants were entitled to terminate plaintiff's temporary total disability compensation effective 31 March 2010, and awarded defendants a credit for benefits paid after that date. Plaintiff appeals.
On appeal, plaintiff argues that the Commission erred (1) by failing to consider all the evidence; (2) by concluding that plaintiff has wage-earning capacity; (3) by terminating plaintiff's wage compensation; (4) by issuing defendants a credit for temporary total disability payments after 31 March 2010; and (5) by failing to determine all issues before it.
II. Wage-Earning Capacity
Review of an Opinion and Award of the Industrial Commission "is limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law. This 'court's duty goes no further than to determine whether the record contains any evidence tending to support the finding.' " Richardson v. Maxim Healthcare/Allegis Grp.,362 N.C. 657, 660, 669 S.E.2d 582, 584 (2008) (quoting Anderson v. Lincoln Constr. Co.,265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965) ). "The Commission's findings of fact are conclusive on appeal when supported by competent evidence even though evidence exists that would support a contrary finding." Johnson v. Southern Tire Sales and Service,358 N.C. 701, 705, 599 S.E.2d 508, 512 (2004) (citation omitted). "The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony." Anderson,265 N.C. at 433-34, 144 S .E.2d at 274.
Plaintiff argues that the Commission erred by concluding that he had wage-earning capacity during the time he was self-employed with ILC. We disagree.
As an initial matter, plaintiff argues that the Commission erred by failing to consider all of the evidence. However, "[w]hile the Commission is not required to make findings as to each fact presented by the evidence, it must find those crucial and specific facts upon which the right to compensation depends so that a reviewing court can determine on appeal whether an adequate basis exists for the Commission's award." Johnson,358 N.C. at 705, 599 S.E.2d at 511 (citation omitted). "[T]he fact that the Commission may not have made a finding of fact regarding every piece of evidence presented does not mean that the Commission 'ignored' that evidence, but only that it did not determine that a finding of fact regarding such evidence was necessary to support its determination." Beard v. WakeMed,--- N.C.App. ----, ----, 753 S.E.2d 708, 711 (2014). Additionally, this Court is "not at liberty to reweigh the evidence and to set aside the findings of the Commission, simply because other inferences could have been drawn and different conclusions might have been reached." Hill v. Hanes Corp.,319 N.C. 167, 172, 353 S.E.2d 392, 395 (1987) (citation and quotation marks omitted).
Disability is defined as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen.Stat. § 97-2(9) (2013). A plaintiff bears the burden of showing that he is unable to earn the same wages he had earned before the injury, either in the same employment or in other employment. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). "Compensation must be based upon loss of wage-earning power rather than the amount actually received. If the wage-earning power is only diminished, the employee is entitled to benefits under N.C.G.S. § 97-30." Lanning v. Fieldcrest-Cannon, Inc.,352 N.C. 98, 105, 530 S.E.2d 54, 59 (2000) (citation omitted). "The earning capacity of an injured employee must be evaluated by the employee's own ability to compete in the labor market. If post-injury earnings do not reflect this ability to compete with others for wages, they are not a proper measure of earning capacity." Id.,530 S.E.2d at 60. The test for determining whether an injured self-employed employee has wage-earning capacity "is that the employee (i) be actively involved in the day to day operation of the business and (ii) utilize skills which would enable the employee to be employable in the competitive market place notwithstanding the employee's physical limitations, age, education and experience." Id.at 107, 530 S.E.2d at 61.
In the instant case, competent evidence supports the Commission's finding that plaintiff "had regained the capacity to earn at least partial wages, compared to what he was earning at the time of the injury, by working as a masonry supervisor." The Commission heard evidence from both plaintiff and defendants relating to plaintiff's return to work after his 1 February 2010 surgery. Debbie Dominguez, vice president of Dominguez Masonry, testified that ILC was one of Dominguez Masonry's main masonry subcontractors, and that plaintiff was Dominguez Masonry's contact point at ILC.
Marcello Dominguez Lopez ("Lopez"), a supervisor for Dominguez Masonry, testified that he met with plaintiff to discuss project specifications when ILC began a new subcontracting job for Dominguez Masonry. Plaintiff was also Lopez's contact person when the ILC crew required additional materials. Although plaintiff did not actively engage in laying brick himself, Lopez testified that plaintiff was the "point man" at ILC for every subcontracting job.
Plaintiff testified on his own behalf regarding his work for ILC. Specifically, plaintiff testified that he owned ILC, and was the person that Dominguez Masonry would contact in connection with particular jobs. Plaintiff also testified that since he was the ILC crew leader, "whenever a new job comes up, I just show up to see what needs to be done and I tell the workers what needs to be done." Although plaintiff had not performed masonry work laying floors since February 2010, he was still the crew leader, and participated in light activities on job sites, including reviewing building plans, supervising and instructing his work crew, and picking up trash and work materials.
Plaintiff's wife, Norma Corpus Paredes ("Ms.Paredes"), also testified at the hearing regarding plaintiff's work for ILC. Ms. Paredes testified that if plaintiff were to find work with another company, ILC would need to hire a new employee to perform the supervisory duties plaintiff currently performs. According to Ms. Paredes, plaintiff and his brother discussed who would replace plaintiff as ILC's supervisor and crew leader.
Based upon this evidence, the Commission found that as of 31 March 2010, plaintiff had regained the capacity to earn at least partial wages, and concluded that plaintiff "has been actively involved in the day to day operations of ILC Masonry and has utilized skills that would enable him to be employable in the competitive market place notwithstanding his permanent work restrictions and considering his age, education and experience." The competent evidence presented at the hearing indicates that plaintiff was ILC's primary contact regarding subcontract work, and although plaintiff only performed light activities and not heavy masonry on job sites, his role as crew leader and supervisor indicated that plaintiff was directly involved in the day-to-day operation of ILC.
Plaintiff also contends that the Commission's finding that plaintiff utilized "skills which would enable him to be employed in the competitive market place" is erroneous. Specifically, plaintiff contends that the Commission's reliance on forensic accountant Earl Ray Hopper's ("Hopper") testimony is erroneous since the finding is contrary to the testimony of the Builders Mutual claims adjuster. At his deposition, Hopper testified that all of ILC's revenue related to plaintiff's activities, and explained that
the subcontract agreements that have been performed, based on what I've seen now [in analyzing ILC and plaintiff's finances] ..., indicate that Dominguez Masonry has used ILC, and prior to that they used [plaintiff] as a subcontractor, have been happy with those services and have consistently used that company, to a great extent, because of his work within that company.
Hopper then testified that although he could not name specific masonry companies that would hire plaintiff, his opinion was that "if you have someone who has developed those kinds of relationships with customers and that has continued to endure with those relationships over a period of years and can supervise a team as he's been able to do, that that's [sic] a very valuable person indeed." Since the Commission is the "sole judge of the credibility of the witnesses and the weight to be given their testimony," Anderson,265 N.C. at 434, 144 S.E.2d at 274, and it accepted Hopper's testimony as credible, the Commission's finding that plaintiff utilized skills that would enable him to be employed in the competitive job market is supported by the evidence. Therefore, based upon the evidence, the Commission properly concluded that plaintiff had wage-earning capacity, since he had been "actively involved in the day to day operations of ILC Masonry and has utilized skills that would enable him to be employable in the competitive market place notwithstanding his permanent work restrictions and considering his age, education and experience."
III. Termination of Benefits
Plaintiff also argues that the Commission erred in terminating his wage compensation, effective 31 March 2010. Specifically, plaintiff contends that N.C. Gen.Stat. § 97-18.1 does not provide for retroactive termination of benefits. We disagree.
N.C. Gen.Stat. § 97-18.1(b) (2013) provides, in pertinent part, that "[a]n employer may terminate payment of compensation for total disability being paid ... when the employee has returned to work for the same or a different employer[.]" N.C. Gen.Stat. § 97-42 (2013), however, provides that "[p]ayments made by the employer to the injured employee during the period of his disability, or to his dependents, which ... were not due and payable when made, may, subject to the approval of the Commission be deducted from the amount to be paid as compensation."
In the instant case, the Commission found that plaintiff had regained the capacity to earn at least partial wages as of 31 March 2010, and therefore was not disabled as of that date. Since the Commission properly found that plaintiff was not disabled as of 31 March 2010, the Commission's conclusion that defendants were entitled to terminate payment of compensation on that date was appropriate. Therefore, the Commission properly terminated plaintiff's benefits retroactively.
IV. Employer Credit
"The decision of whether to grant a credit is within the sound discretion of the Commission." Cross v. Falk Integrated Techs., Inc.,190 N.C.App. 274, 286, 661 S.E.2d 249, 257 (2008) (citation and internal quotation marks omitted). "As such, the decision by the Commission to grant or deny a credit to the employer for payments previously made will be reversed only for an abuse of discretion." Id.
In the instant case, the Commission concluded that
A preponderance of the evidence in view of the entire record shows that Plaintiff returned to work with ILC Masonry on March 31, 2010 following his February 1, 2010 surgery. Therefore, Defendants are entitled to terminate Plaintiff's temporary total disability compensation effective March 31, 2010. To the extent that Plaintiff's financial records demonstrate a partial loss of wage earning capacity, Plaintiff is nonetheless not entitled to any compensation pursuant to N.C. Gen.Stat. § 97-30 because the onset of his partial disability occurred more than 300 weeks from the date of injury. Based upon Plaintiff's return to work and Defendants['] continued payment of temporary total disability benefits, Defendants are entitled to a credit for benefits paid to Plaintiff from March 31, 2010 to the present.
Based upon the evidence, this conclusion is supported by the Commission's findings regarding plaintiff's injury and return to work. Therefore, the Commission did not abuse its discretion in awarding defendants a credit for benefits paid after plaintiff was no longer disabled.
V. Determination of Issues
Plaintiff's final argument is that the Commission erred by failing to determine all the issues before it. Specifically, plaintiff contends that the Commission failed to make findings of fact regarding his disability according to the second and third factors of Russell v. Lowes Product Distribution,108 N.C.App. 762, 425 S.E.2d 454, (1993). We disagree.
A plaintiff may prove disability in one of four ways: (1) produce medical evidence that he is, physically or mentally, as a consequence of the work-related injury, incapable of work in any employment; (2) produce evidence that he is capable of some work, but that after a reasonable effort on his part he has been unsuccessful in obtaining employment; (3) produce evidence that he is capable of some work but that it would be futile to seek other employment because of preexisting conditions like age, inexperience, or lack of education; or (4) produce evidence that he has obtained other employment at a wage less than that earned prior to the injury. Russell,108 N.C.App. at 765, 425 S.E.2d at 457. However, "[w]hile the Commission is not required to make findings as to each fact presented by the evidence, it must find those crucial and specific facts upon which the right to compensation depends so that a reviewing court can determine on appeal whether an adequate basis exists for the Commission's award." Johnson,358 N.C. at 705, 599 S.E.2d at 511. "[T]he fact that the Commission may not have made a finding of fact regarding every piece of evidence presented does not mean that the Commission 'ignored' that evidence, but only that it did not determine that a finding of fact regarding such evidence was necessary to support its determination." Beard,---N.C.App. at ----, 753 S.E.2d at 711.
In the instant case, the Commission relied upon the day-to-day operation analysis set forth in Lanning,352 N.C. at 107, 530 S.E.2d at 61, and concluded that since
Plaintiff has wage-earning capacity in his self-employment with ILC Masonry, Plaintiff has not established disability under Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). Although Plaintiff produced evidence in support of his contention that he is disabled under Russellmethod 2, ... consideration of said evidence is unnecessary as Plaintiff retained earning capacity in his self-employment with ILC Masonry. Moreover, the evidence presented by Plaintiff does not show a reasonable job search, as Plaintiff did not begin a job search until two years and eight months after his February 1, 2010 surgery.
Because plaintiff was self-employed, the Commission properly relied on Lanningfor its determination regarding plaintiff's wage-earning capacity, and properly concluded that consideration of plaintiff's Russellevidence was unnecessary to support its determination due to plaintiff's self-employment with ILC. Plaintiff's argument is overruled.
VI. Conclusion
The competent evidence presented at the hearing supports the Commission's finding and conclusion that plaintiff is directly involved in the day-to-day operation of ILC and utilizes skills that would enable him to be employable in the competitive marketplace. Since the Commission properly found that plaintiff had regained the capacity to earn at least partial wages, and was not disabled as of 31 March 2010, the Commission's conclusion that defendants were entitled to terminate payment of compensation on that date was appropriate. Additionally, the Commission did not abuse its discretion in awarding defendants a credit for benefits paid after plaintiff was no longer disabled. Therefore, we affirm the Commission's Opinion and Award.
AFFIRMED.
Judges STROUD and TYSON concur.
Report per Rule 30(e).
Opinion
Appeal by plaintiff from Opinion and Award entered 31 July 2014 by the North Carolina Industrial Commission. Heard in the Court of Appeals 22 April 2015.

Plaintiff's name is listed both as "Melchor Zapata Dominguez" and "Melchor Dominguez-Zapata" in various places in the record. We use plaintiff's name as it is written in the Opinion and Award on appeal.